Mr. Zenger, are you ready to go? Yes, sir. Come on up. May it please the Court, thank you very much for hearing this today. I would like to hopefully in the next few minutes discuss with you two points primarily. First, I want to talk about what I believe was an invalid assumption that the District Court made in making its ruling on damages and second, I want to address the Court's approach to its willful infringement determination, but I would like to also point out what is not on appeal here. First of all, this is not an appeal of the Court's determination of infringement, which defendants argue in their brief. This is also not an appeal of the determination of invalidity, which the defendants did not appeal, but they argue in their brief. This is also not an appeal of at least a reasonable royalty of 8%, which that as being the minimum amount is not on appeal. Let me ask you a sort of a housekeeping question. What's your record evidence that the elegant model was included? Was included? Yeah, was included in sales. Your Honor, as stated in our brief, the elegant model was alleged in the complaint, then it was presented in our motion for summary judgment in our statement of uncontested facts. Right, those are attorney arguments. Where is it that you say it's an uncontested fact? It was set forth in the proper declaration, factual declaration in support of the motion for summary judgment by the witness who inspected the device. And as that then became the identification during the summary judgment proceeding, it was never contested, and it was presented to the Court and... And the other side's going to say that they agree with that? They're going to say... Well, it was never contested at the summary judgment proceeding, and the determination of infringement was closed by the Court. And then, even later in the proceeding, defendants attempted to reopen the infringement evidence and the Court refused, saying, I'm done with infringement, don't give me any more infringement evidence, and we're moving on. Can I just take you to the damages question and tell me if, let me tell you what I'm focusing on. Okay. It seems to me, it seems to me at the moment, that the key thing that the District Court did that raises a question for me is that it looked retrospectively at the actual amount of profits that the defendants earned and said, that's my base, and I'm going to apply a percentage to it. That might be right if this were a perfectly competitive market in a textbook situation where the defendants were price takers, so that if they had to pay 8% on top of the sales, they still would charge the same price. But there's no suggestion that this is that kind of market. Indeed, the suggestion is it's a two-firm market where, if you were trying to figure out at the negotiating table how to preserve a profit, you would not take the price as a given. Am I on the right track in thinking about the problem here? Yes, sir. The District Court made what, I think this all tumbled from what I believe was an invalid assumption by the District Court. And in its ruling, and it's cited at the appendix, at page 386, this is what the court said. It talked about some of the benefits of the invention, and then it followed on with this statement, quote, considering these benefits, comma, while still allowing defendants a profit on infringing sales, comma, requires the court to use its best ability to estimate what defendants would have likely paid for the patented design, period, close quote. That's in the first full paragraph on page 12 of the decision, appendix 386. So the court was working on the assumption, in its mind, that it was to give the defendant the ability to still make a profit. I want to actually press back on that, because it seems to me that what the judge said in that regard I don't view as objectionable. That is, it is sometimes the case that a particularly inefficient defendant can't say, we're so inefficient, we get to pay less, because we're inefficient, so we can make a profit. But on the other hand, at the negotiating table, the defendant is not going to, a hypothetical defendant, is not going to pay more than so much that it's going to end up losing money. I thought that the key problem here is the retrospective look at the actual profits during the damages period, which assumes a fixed price, which you cannot assume if you look at it from the prospective perspective, because the price might have been higher, and they might have earned their full, what is it, $110,000 or something in profit by charging 8% more, and then you get your 8% on the sales, not on the profits. I don't disagree that they're looking back the way the district court did it, but that's what the district court did. But I believe it was improper for the following reasons. The cases indicate that when looking at establishing a reasonable royalty, they do their best. And the inquiry is what would reasonable people have done if they were trying to negotiate here. But here's a factor where I think the court made its error. The court went on to say, right after the quote that I just made, the court went on to say, therefore, I will calculate a royalty based on net profits. But if you do look back, even on what the parties did do, when they negotiated, when they talked about negotiating the royalty, it was on the sales price, not on the net profit price. There's no actual evidence of anybody suggesting a percentage applied to profits in terms of evidence. Is that right? Not to net profits, correct. Part of your problem is paucity of evidence across the board. There just wasn't, and the district court complains about that. There just wasn't much for the court to review. Well, there was evidence. When the parties attempted negotiation in the earlier emails, they talked about... But they're negotiating about a lot more than just this infringement. They're talking about potential joint sales, for example. Am I not correct? It was the position presented at the trial level that the plaintiffs were only willing to license manufacturing, and that the plaintiff wanted to retain the right to sell in the United States. So I don't think that... They're talking about selling each other's products, are they not? I mean, that's what I got from the record. Well, the defendant, or the plaintiff, was not willing to allow the defendant to sell the patented device in the United States. They were willing to let them make it, and then perhaps sell it to us to sell, but there wasn't any evidence in the record that the plaintiff was willing to allow the defendant to both make and sell in the United States. But there is evidence that that's what the defendant was asking for in those negotiations. So isn't it hard to apply that number when they're saying, well, no, we're talking about this, and you're saying, but I'm talking about this. And it isn't the number that really I'm arguing about today, because the district court went back in its amended judgment and said 8%, and we believe that 8%... That it shouldn't be limited to 8%, but we'll live with 8% if that's what they're going to say. But here's the error where we believe the court made this error. The court said, I'm going to calculate it on net profits. But when the parties were negotiating, regardless of what the number was, it was on the selling price. And so the only evidence in the record as to what a reasonable royalty would be based on is the selling price. Well, let's assume for a second that you're right, that it was wrong under these circumstances that the base was deemed to be the net profits, and that's wrong, and it should have been the sales. Well, I don't think that necessarily means that you get to keep the 8% rate. I think that would have to be remanded, wouldn't it? I don't think so, because... Because the choice of the rate was not completely divorced and independent from the determination of the base. I think you'd have to put all of that back in front of the district court judge. Well, the way that I read what happened was the court looked at what the negotiation the parties attempted, and there was a 5% number, and that 5% number was based upon the sales price. And the court said, we could start there. The court then went through the George Pacific factors and increased it up to 8. So I believe it was independent, because where the district court started at 5 was based upon the earlier negotiations of the parties for royalty on the sales price. Is it your position that net profits can never be used when looking at reasonable royalty? Maybe if there's some connection to what might have been the anticipated profits at the time of the negotiation, which would have happened at the beginning of infringement, if there's a connection between the actual collected profits and what was perceived to be the anticipated profits, then maybe you can look at things like the net profits. Of course there could, and I could see another situation in which the parties had talked about the royalty being based on net profits, but that's not what we have here. So you know, Mr. Zenger, you're into your rebuttal time. Well, I would ask the court to realize that what happened was the district court came up with an 8% figure. We believe it was based on an invalid assumption that they were to let the defendant make a profit. And here's the other part. We asked for all the data so we could figure out their net profit, and it was withheld from us. That withholding of the evidence should not be construed against the plaintiff. It should be construed against the defendant for failing to present that evidence. We presented to the court the evidence that even then their net profit was 22%, not 5%. But the court didn't believe their witness. No, it wasn't from our witness. It was their own financial documents that showed there was a 22% royalty. They did give us a financial report that said what their net profit was. With respect, I'll just take a minute and reserve the rest of the time. On the willfulness issue, my understanding of the court's case law is that the willfulness issue is an objective analysis, not a subjective one. Half and half. I mean, I take it to see if I make sure I understand the point. The district judge did not do a full Seagate analysis, didn't do the objective part. And on the subjective part, as I understand it, the district judge relied on one and only one thing, concluding that the other side had a reasonable belief in non-infringement before the summary judgment simply because the New York District Court denied a preliminary injunction. And the New York District Court did so because you, at the time, had no evidence about their product. And the problem with that, I take it, your argument is they had plenty of evidence about their product, so they couldn't possibly infer from the fact that you didn't have the evidence that they were being reasonable. Well, I think our position is that when that issue came up and when an issue of personal jurisdiction came up... I think your answer is yes to Judge Toronto's question. He crystallized your position perfectly, didn't he? That is what occurred at the lower level. But our position is they didn't have a good faith basis to believe non-infringement or invalidity because neither of those analysis had been performed by them or by the court. And the fact that it hadn't been done by them is revealed by what they presented to the court six years later, or excuse me, several years later when facing a motion for summary judgment. And they could not, even years later, present an element-by-element, claim-by-claim analysis of non-infringement or invalidity. They totally and utterly failed years later, which seems to tell me that they had no good faith belief earlier on that they had a basis for non-infringement or invalidity. So I'll reserve the rest of my time for a moment. Thank you. We'll give you two minutes when we come back down. Good morning, Your Honors. Good morning. May it please the Court, there's no support that the trial judge made an error of law or fact so as to abuse his discretion in awarding $10,800 in royalties in this case. This was a two-day trial on damages. So just focus for me on the thing that I think you were listening, so you know what I'm focused on, on profits. I don't understand how it is rational to look back at your actual profits, which assume the price that you were paid, that you were charging, and assume from that that that is the base against which the royalty should be measured, since it is by assumption here, because there are no contrary facts, a market in which had you been told you had to pay 8% on top of your price, you could have raised the price and earned maybe the same profit. So I just don't understand how it is economically rational to look retrospectively at the actual profits, which takes the actual price that you were charging as a given in calculating the royalties. Well, Your Honor, in answer to your response, Judge Stewart ultimately awarded no royalty on his initial determination. It was only after he scoured the record where it was... But the judgment before us is a judgment of some positive number, $10,800 or something, right? And that was on Judge Stewart's opinion on rehearing. And what he did was he looked at the record, and he rationalized as to everything that was before him. But what was not before him, Judge, was an expert opinion. The appellant had one witness, Mr. Brooks, who was admonished by Judge Stewart because he did not want to testify to either his retrospective profit on the pool enclosures or his going forward profits. And so beyond that, we think this is... He did want to testify. He didn't want to testify as to the underlying facts, isn't it? Because he wouldn't provide any supporting material. He... That's not... We don't believe that's the case, Your Honor, is he was questioned about profitability and sales at page 187 of the transcript. And Judge Stewart admonished him saying, Mr. Brooks, if your attorney has not made this clear to you, I will. I cannot accept evidence and rely on evidence that is not produced here in open court. What Mr. Brooks said was that because his competition was in court, that he didn't want to provide any basis or information about his margin, either his gross profit, his net profit after salary, or his gross revenues. I agree with you that there was a pretrial determination as to the defendant, Alikoff's numbers, and the $2.7 million number, and the fact that that was the sale on the 74 enclosures that were at issue. But what was completely absent from the trial, Your Honors, was evidence presented by the appellant that would suggest, okay, we shouldn't use gross net profit here. We should use some other percentage. And so what Judge Stewart was left with was a determination as to how he could go at it. And we urge that this is the Lindemann case, but on even another level. In Lindemann, Your Honors decided that the appellant had tried to get another bite at the apple on appeal. And essentially in that case, there was evidence in Lindemann that a royalty was owed and there was an award of a nominal amount of $10,000. Here, we don't have any testimony. The plaintiff appellant in this case had no expert. They had one witness. And the whole case as a two-day trial before Judge Stewart was about damages. The whole issue of liability had already been resolved on summary judgment. Can I ask a question? Absolutely. The question is, why wasn't it legal error for the court below to use the net profit as the base rather than the sales as the base? It used the net profit. Right. And I'm a little worried about that. Here's the essence, I think, of Judge Stewart's... Why wasn't that legal error? Assume for the moment I'm leaning towards thinking that's legal error. Pardon me, Your Honor? Assume for the moment that I'm over here thinking that that is legal error, that choice was legally erroneous. Let's hear the answer for why you can persuade me that that is wrong. Two responses. If you look at the carefully crafted analysis of Judge Stewart in his opinion on the reconsideration motion, he goes through an analysis and he looks at cases where the Georgia Pacific factors and he discusses them. And I think there's two responses to your question, Judge Chen, and that is, one, the award of the royalty of $10,800 based upon net profit had a lot to do in this case with the fact that it wasn't as determined by Judge Stewart a high value to a licensee. Why? Because this is not like a drug where the company would have to go out and do a million dollars worth of research and development. This is a pool enclosure. And so all that had to happen to design around the patent was to just make the end panels of the pool enclosure non-removable. And if you look at the 160 patent, that is an element of the patent. And so as soon as the summary judgment motion was decided in this case, Your Honor, what I did was I, myself, defendants, my clients, instructed their factory to no longer make pool enclosures with removable panels. So they designed around it at that point in time. Removable end panels. I'm sorry? Removable end panels. Removable end panels, yes. So you have an enclosure over a pool and they have retractable tops so that you can move them back and forth. And then part of the 160 patent was that it had removable end panels. That was part of the art. What Alikoff did after the summary judgment was determined and infringement was found, what Alikoff did was they, it ordered the factory to no longer make, distribute, or otherwise sell pool enclosures that had removable panels. So it was an easy design around. And that's why we believe, and I think it's consistent with Judge Stewart's opinion, that the value to a licensee was not a significant number. That this was not something where a competitor would have to go out and do a lot in order to design around it. So I think that is a substantial reason why they used net profit as opposed to either gross profit or gross sales. And I would assert to the court that Mr. Zenger and the appellant, they can't cite any case that would suggest that you have to use gross profit or that you have to use gross revenue. It's done on a case-by-case basis, as your honors know, and it's based upon the Georgia Pacific factors, which are all taken into consideration. Can I ask, was there evidence presented about either the cost of the design around or any lesser attractiveness of the product as a result of no longer having the end panels be removable? There wasn't any testimony in trial on that issue, your honor. And from that standpoint, we go back to where I started the discussion today, which is that it wasn't the appellee's burden to carry forward a basis as to how to calculate this royalty. There was a finding of infringement and there is an obligation on the trial judge to award a reasonable royalty based upon his consideration of all the circumstances. But from the standpoint of, particularly the testimony of Mr. Stankus and Mr. Zitko, they were the appellee's witnesses at trial. Mr. Zitko was the president of Alicoff and Mr. Stankus is the president of Pool and Spawn Closures. Mr. Coffey, let me give you a chance to respond to one of my concerns. I'm sure you'll recognize that Seagate's first step is objective. So the state of mind of your clients doesn't matter. And what the court is faced with is a situation where you're relying in your argument solely on a procedural decision in the New York court saying we're not going to grant an injunction. I could understand if you could say subjective, you'd have an argument. But looking at it objectively, it doesn't look to me like you do. A fiction, Your Honor. I cite to page A8 of the appendix. And the determination in the New York court was not on jurisdictional grounds as the appellee suggests. I read the court's opinion at page 8 which says, turning to the issue of your requirement that you show the likelihood of success on the merits, the complaint and the information and support of the information of the complaint alleging infringement seems to me to be wholly deficient. Right. The district judge in New York self-evidently denied the preliminary injunction on the merits. But for a very particular reason. The plaintiff came in and had essentially no information about your product. So the fact that the judge said I can't possibly find a likelihood of success on your product because the plaintiff hasn't shown me anything, doesn't seem to me to have much at all to do with whether you, who know your product better than anybody else in the world, might have a judgment that it's plainly infringing. I completely understand your question. And my response, Judge, is one, where were they? The initial hearing in New York. Where were who? Where were the appellants? The initial hearing in New York which denied the preliminary injunction was followed by a year of discovery in New York and a jurisdictional hearing that took place a year later. And then it wasn't until 2009 that the case was filed in, or 2008 the case was filed in, in New York. And I think that's a very, very right to bring that. So do you think that you would be able successfully to resist a willfulness finding in a case in which you had documents that said we have carefully examined the patent. It's perfectly clear that we infringe. But we're not going to do anything until we're sued for a preliminary injunction. And then they don't sue for a preliminary injunction. Do you think you win that willfulness case? Just because they don't seek a preliminary injunction. I think that the denial of the preliminary injunction is a very strong indicia that my client should have had an expectation from that point that they were not infringing the patent, even if they knew they were. Excuse me? Even if they knew they were. Well, there would have to be some showing that they were. And I would suggest that the record, there's no evidence beyond the denial of the preliminary injunction, which would suggest that they were until the summary judgment ruling was made. But there is some evidence. And the some evidence consists of the objective part, which in Kelo Pass we indicated fairly enough, is usually the dominant form of evidence for drawing the subjective conclusion. So there is some evidence. Namely, your defenses in the merits proceeding when it got to that were, by assumption here, extremely weak. Let's say even objectively unreasonable. And as Kelo Pass indicates, it's a very small inference from that that there is also failure to satisfy the subjective, the almost subjective, from the Seegate. I think that the appellant would not satisfy the objective standard to the extent that I think Your Honor is suggesting that there was something out there which would suggest beyond the preliminary injunction, that they somehow should know. Well, what was your non-infringement defense? What was your non-infringement defense to the other side's motion for summary judgment infringement? Prior art. Right. You didn't have a non-infringement defense. You had only an invalidity defense, right? We had the invalidity defense and we had the... And you didn't do any kind of limitation by limitation analysis of those references that you put forward, right? The... Yes or no? I'm sorry? Yes or no? Could you repeat the question, Your Honor? You did not do any kind of element by element analysis of comparing the prior art references you were relying on to the claim limitations here. We believe we did. And we believe we opposed the summary judgment motion on that basis. And we... One of the things, Your Honor, that is in play here is that... Where is it in the record? I'm sorry? Where is your claim by claim analysis in the record? It certainly wasn't an issue at trial. It was briefed as part of the summary judgment motion, we believe. And you've got to remember, Your Honor, that Allikoff was selling the same pool enclosures... You're not answering the question. ...throughout the world for 30 years. You're not answering my question, Mr. Connolly, Your Honor. I understand. Time has run. So you want to give me a cite to the record before you sit down? I can't cite to the record that there would have been a element by element analysis of that. But I don't think that under an objective stance... So you think that you did do it, because that's what you just said? We believe that we did. Okay. It turns out. And I hope I didn't want to be... I hope I answered your question. But we believe that we did it. Your time has expired. Okay. Thank you, Your Honor. Mr. Zenger? I will answer that last question. There is none. Can I ask you a question about something that... Yes. ...that Mr. Coffey said. And I'll, I guess, change the wording or the concept or something. Why should the district court's damages conclusion finding not stand, even if there truly was a conceptual problem with the reliance on net profits? Why should it not stand because the design around cost and diminution in quality, if there was one, could easily be judged to be so small that a one-time life of patent payment of $10,000 is, $10,008, is just plain reasonable? Two reasons. First, no evidence was ever presented at trial or in this record or in the appendix or in any of the briefing that there was a cost associated with it. First. So there wasn't any... So it might have been a high cost. It might have been a very high cost. Is that plausible? But I don't think it is plausible. And here's why. They didn't do a design around. They say they talked about whether it was possible to do a design around, but the evidence of record is they never did a design around. How did we show that? We showed infringement. We showed their invoices. They testified that when they were all sent in, they were all sent in disassembled, including the removable end panels, and that that's how all the infringing devices came into the United States. And so the end panels continued to be removable? Exactly right. So up until the time of the court's infringement order, they were shipped in, removed, which indicates to me they're removable. And then after the court's, in summary, judgment ruling on infringement, they continued to ship them into the United States the exact same way. And then after the court's invalidity decision, they continued to ship them into the United States the exact same way. I'm giving you a few more seconds because your opponent ran over. Thank you. So my answer is, Judge Trondo... The district court found otherwise, right? What? The district court found otherwise about the design around. You're saying the design around didn't really happen. The design around didn't. The objective facts show the design around never happened. What the judge relied upon was a statement of Mr. Stonk saying, I called the factory, I told them this shouldn't happen, and they had a discussion that they could do things differently. But the objective facts are, they never did. So I don't believe that the ruling should stand as a... What's your record site on that, that they continued to ship the same thing? It is in one of our footnotes. Let me just get there as quickly as I can. Thank you for letting me look for it, Your Honor. I'll let you through there. If you take too long, Mr. Zenger, I'll make you sit in the back of the courtroom and jump up in the middle of the next party's argument. Oh, no. No, no, no, no, no. Don't make me do that. I want to be done. Here it is. Your Honor, it starts on... The citations are on page 44 of our brief. Blue brief? Yes. You're a blue brief. Okay, blue brief. And it cites to the record with a group of invoices that showed what happened before, after, and then later. You've given us something at which to look. Yes. Thank you, counsel. Thank you very much, Your Honor.